FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 08, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

APRIL P.,[1]

    Plaintiff,

  v.

MARTIN O'MALLEY, Commissioner of
Social Security,

    Defendant.

No. 2:23-cv-347-EFS

**ORDER AFFIRMING THE ALJ'S DECISION**

Plaintiff April P.'s Title 16 claim for social-security income benefits was approved when she turned 55 in 2021. However, her Title 2 claim for disabled widow's benefits was denied because the prescribed period ended September 30, 2018, and the ALJ found that Plaintiff was not disabled as of that date. Plaintiff asks the Court to find that she was disabled for Title 2 purposes before September 30, 2018. For the reasons that follow, the ALJ's decision is affirmed. Plaintiff's claim for disabled widow's benefits under Title 2 is denied.

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

# I.    Background

On June 3, 2020, Plaintiff applied for disabled widow's benefits (DWB) under Title 2 and supplemental-security-income benefits under Title 16 based on migraines and pain caused by back and joint conditions.[2] Initially, the claims were denied, but on reconsideration, she was found to meet the age and medical eligibility requirements for Title 16 benefits when she turned age 55 on March 22, 2021.[3] The Title 2 DWB application remained denied.

Plaintiff requested an administrative hearing on her DWB application. In February 2023, ALJ Lori Freund held a telephone hearing, during which Plaintiff and a vocational expert testified.[4] The ALJ denied the DWB application.[5] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and other evidence, and the ALJ likewise found the third-party statements from Plaintiff's mother, daughter, and friend not persuasive.[6] As to the medical opinions, the ALJ found:

---

[2] AR 248–63.

[3] AR 148–163.

[4] AR 51–86.

[5] AR 25–50. Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[6] AR 35–43.

- The reviewing opinions of Michael Regets, PhD, and Patricia Kraft, PhD, persuasive for the Title 2 period but not for the Title 16 period.

- The reviewing opinions of Normal Staley, MD, and Gregory Saue, MD, partially persuasive for the Title 2 period but for the Title 16 period.

- The examining opinion of Thomas Genthe, PhD, persuasive.

- The examining opinions of Joyce Everhart, PhD, and Ryan Agostinelli, PA-C, not persuasive.[7]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since September 1, 2018, the alleged onset date,[8] through the end of the prescribed period, on September 30, 2018.

- Step two: Plaintiff had the following medically determinable severe impairments of migraines and degenerative disc disease of the thoracic and lumbar spine; but Plaintiff's asthma, trochanteric bursitis of the left hip, left shoulder osteoarthritis, unspecified depressive disorder, and panic disorder were not severe impairments.

---

[7] AR 39–43.

[8] AR 56 (Plaintiff modified the alleged onset date to September 1, 2018, at the hearing).

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work:

  with lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking at least 6 hours in an 8-hour workday, and sitting at least 6 hours in an 8-hour workday; except that she should avoid climbing ladders, ropes, and scaffolds, occasionally climb ramps and stairs; could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; should avoid all exposure to unprotected heights and working in environments with noise levels above that of heavy traffic; and should avoid concentrated exposure to excessive vibration; fumes, gases, odors, dusts, and gases; and, extreme heat.

- Step four: Plaintiff had no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as marking clerk, routing clerk, and sales attendant.[9]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[10]

---

[9] AR 28–50.

[10] AR 12–17.

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[11] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12]

## III.    Analysis

Plaintiff argues the ALJ committed several errors, namely: 1) failed to find several conditions to be severe impairments; 2) improperly rejected Plaintiff's subjective complaints about her migraine headaches and mental-health conditions; 3) improperly rejected the opinions of Plaintiff's examining providers; and 4) failed

---

[11] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1520. *See* 42 U.S.C. § 405(g).

[12] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

to incorporate each limitation into the RFC. In response, the Commissioner

defends the ALJ's evaluation of the evidence, Plaintiff's subjective complaints, and

opinions. As is explained below, the ALJ's findings are adequately explained and

supported by substantial evidence.

**A.     Step Two: Plaintiff fails to establish error.**

Plaintiff argues that the ALJ erred at step two by failing to find that her

anxiety/panic disorder, asthma, left hip bursitis, and left shoulder arthritis were

severe impairments. This argument is merely supported by a three-sentence

paragraph. Plaintiff failed to flesh out and support her argument that the ALJ

committed a step-two error with law and facts.[13]

Notwithstanding Plaintiff's failure to adequately present her step-two

argument, the Court addresses it. To qualify as a severe impairment, the medical

evidence must establish that the impairment would have more than a minimal

_____

[13] *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003)

("We require contentions to be accompanied by reasons."); *McPherson v. Kelsey*, 125

F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived.  It

is not sufficient for a party to mention a possible argument in a most skeletal way,

leaving the court to . . . put flesh on its bones.").

effect on the claimant's ability to work.[14] Here, the ALJ meaningfully explained why the medical record reflected that 1) Plaintiff's anxiety/panic disorders did not have more than a mild limitation on her mental functioning; 2) her "mild, intermittent asthma was controlled with treatment," 3) her left hip bursitis did not more than minimally impact her ability to work following her steroid joint injections; and 4) her left shoulder arthritis did not more than minimally impact her ability to work during the prescribed period.[15] The ALJ's step-two analysis was supported by substantial evidence.

**B.    Symptom Reports: Plaintiff fails to establish error.**

Plaintiff also broadly argues that the ALJ failed to provide valid reasons for discounting her complaints about her migraines and mental impairments.[16] In

---

[14] *Id.* § 404.1520(a)(4)(ii); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). *see* Soc. Sec. Rlg. (SSR) 85-28 (Titles II and XVI: Medical Impairments That Are Not Severe).

[15] AR 31–34.

[16] Because Plaintiff only challenges the ALJ's discounting of Plaintiff's reported symptoms related to her migraines and mental impairments, the Court does not review the ALJ's evaluation of Plaintiff's reports about her back and other physical symptoms. *See* ECF No. 12 at 12 ("Did the ALJ err in improperly rejecting the claimant's subjective complaints, particularly those associated with the Migraine Headaches, or the Mental Health conditions?").

1    response, the Commissioner maintains that the ALJ reasonably discounted

2    Plaintiff's reported disabling symptoms because they were inconsistent with the

3    examination evidence and her activities. The Court agrees: the ALJ's reasons for

4    discounting Plaintiff's symptoms are clear and convincing and supported by

5    substantial evidence.

6        1.    Standard

7        The ALJ must identify what symptom claims are being discounted and

8    clearly and convincingly explain the rationale for discounting the symptoms with

9    supporting citation to evidence.[17] This requires the ALJ to "show his [or her] work"

10   and provide a "rationale . . . clear enough that it has the power to convince" the

11   reviewing court.[18] Factors the ALJ may consider when evaluating the intensity,

12   persistence, and limiting effects of a claimant's symptoms include: 1) objective

13   medical evidence; 2) daily activities; 3) the location, duration, frequency, and

14   intensity of pain or other symptoms; 4) factors that precipitate and aggravate the

15   symptoms; 5) the type, dosage, effectiveness, and side effects of any medication the

16   claimant takes or has taken to alleviate pain or other symptoms; 6) treatment,

17   other than medication, the claimant receives or has received for relief of pain or

18

_____

19   [17] 20 C.F.R. § 404.1529(c); *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022);

20   *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc. Sec. Rlg. 16-3p, 2016

21   WL 1119029, at *7.

22   [18] *Smartt*, 53 F.4th at 499 (alteration added).

23

1    other symptoms; and 7) any non-treatment measures the claimant uses or has used

2    to relieve pain or other symptoms.[19]

3            2.    Plaintiff's Reported Symptoms

4            In a June 2020 Function Report, Plaintiff reported that she has migraines 5–

5    7 days a week, limiting her ability to stand, walk, and sleep, but she is able to pay

6    her bills, count change, handle a savings account, and use a checkbook.[20] She

7    advised that she can read, crochet, and paint about twice a week when she is not in

8    pain, and that her migraines keep her from doing social activities.

9            Plaintiff testified that during the prescribed period (September 2018) she

10   suffered from depression, pain, and migraines daily.[21] She tried all of the migraine

11   medications but the medication has not helped and so she is in pain and

12   depressed.[22] She testified that her migraines last 5–7 hours and that some of the

13   medication side-effects have been dizziness, nausea, and heart palpitations.[23] She

14   said her migraines can get so bad that she cannot move or she "beg[s] for death,"

---

[19] 20 C.F.R. § 404.1529(c)(2), (3). *See also* 3 Soc. Sec. Law & Prac. § 36:26,

Consideration of objective medical evidence (2019).

[20] AR 304–11.

[21] AR 60–61.

[22] AR 61, 68–69.

[23] AR 65, 69.

and she seeks relief by going to her room and lying down in the dark and cold.[24]

She said she stopped working in 2009 because her daily migraines made it difficult

to sustain work.[25] A neurologist recommended Botox to treat the migraines, but

Plaintiff declined such treatment because family members who also had migraines

said Botox probably would be ineffective.[26] She testified that her migraines can be

set off by fluorescent lights, noises, airplanes, seasonal allergies, diesel and gas

fumes, perfume, and cigarette smells.[27] She shared that during the prescribed

period she had a panic attack a couple times a week for about an hour.[28]

### 3. Mental-Health Symptoms

Plaintiff contests the ALJ's evaluation of her mental-health symptoms, but

she did not flesh out this argument. Again Plaintiff—not the Court—must flesh out

and support her arguments with law and facts.[29]

Nonetheless, the Court briefly addresses Plaintiff's argument. The ALJ did

not find that Plaintiff had a severe mental-health impairment. And as discussed

above, the ALJ's step-two findings are supported by substantial evidence. In

---

[24] AR 69.

[25] AR 61–62.

[26] AR 63–64.

[27] AR 71–72.

[28] AR 73–74.

[29] *See Indep. Towers of Wash.*, 350 F.3d at 930; *McPherson*, 125 F.3d at 995-96.

DISPOSITIVE ORDER - 10

addition, Plaintiff fails to establish that the ALJ erred when comparing her alleged

symptoms related to her panic attacks, anxiety, and depression to the medical

evidence, which showed that she was generally alert and orientated with normal or

mildly anxious mood or affect and had no difficulty with attention or

concentration.[30]

### 4.  <u>Migraine Symptoms</u>

The ALJ found Plaintiff's reported migraine symptoms were inconsistent

with the objective medical evidence and her activities of daily living. Each of these

reasons are clearly and convincingly explained and supported by substantial

evidence.

### a.  *<u>Objective Medical Evidence</u>*

An ALJ may consider whether a claimant's symptoms are supported by or

consistent with the medical evidence.[31] Here, the only treatment record during the

prescribed period of September 2018 concerned Plaintiff's left hip pain. During this

appointment, the constitutional and neurological findings were normal, and

---

[30] AR 32–33.

[31] *See* 20 C.F.R. § 404.1502(f), (g); *Smartt*, 53 F.4th at 498; *Smolen*, 80 F.3d at 1284; 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

1    Plaintiff appeared well and orientated with normal mood and affect and no focal

2    deficits.[32]

3        The longitudinal medical record contains similar findings. There are

4    treatment notes for various ailments for almost every month from January 2015 to

5    March 2022, with up to three treatment notes a month sometimes.

6    Notwithstanding this lengthy medical record, there is only one treatment record

7    that indicates Plaintiff was in pain due to a headache. This record is Dr. Everhart's

8    psychological examination in August 2020, about two years after the prescribed

9    period.[33] Dr. Everhart observed Plaintiff with pain behavior near the end of the

10    psychological evaluation and Plaintiff reported that she was getting a headache.[34]

11        In comparison, the medical records cited by the ALJ in her evaluation of

12    Plaintiff's reported migraine symptoms reflect that Plaintiff generally appeared

13    well with no-or-mild anxiety or depression, normal vision and extra-ocular motion,

14    intact judgment and insight, and the ability to use full sentences, without reporting

15    a headache, nausea, or vomiting.[35] These cited records are a fair representation of

16    _____

17    [32] AR 853–54.

18    [33] AR 665–69.

19    [34] AR 669.

20    [35] AR 36 (citing, in part, AR 783 (Sept. 2013: well appearing with normal mood and

21    affect); AR 457 (Oct. 2016: denying nausea and vomiting, no acute distress, normal

22    extra-ocular eye movement, with no depression, anxiety, or agitation, and intact

23

Plaintiff's presentation during the years before and after the prescribed period of September 2018.

_____

judgment and insight); AR 424 (Apr. 2017: no distress with mild anxiety and depressed affect and intact judgment and insight); AR 416 (May 2017: no acute distress, depression, anxiety, or agitation with intact extra-ocular motion, judgment, and insight); AR 706 (Aug. 2017: reporting no headaches, lightheadedness, nausea, or vomiting, and appearing well); AR 710, 718 (Sept. 2017 and Jan. 2018: similar); AR 862 (June 2018: normal mood and affect); AR 411 (Feb. 2019: no acute distress, depression, anxiety, or agitation); AR 845 (May 2019: reporting chronic low-grade nausea associated with post-nasal drip); AR 404 (July 2019: mild pain/distress due to left hip pain with no depression, anxiety, or agitation); AR 391 (Feb. 10, 2020: mildly anxious mood and affect with frequent psychomotor agitation, and linear thought processes with some obscured insight); AR 384–86 (Feb. 22, 2020: denied nausea and vomiting); AR 382 (Feb. 27, 2020: mildly anxious with frequent psychomotor agitation and some obscured insight); AR 378 (March 2020: no depression, anxiety, or agitation; able to speak in full sentences); AR 682 (June 2020: denying nausea and vomiting, with no acute distress and with intact extra-ocular motion); AR 666–69 (Aug. 2020: (speaking in full sentences with anxiety and some depression, only agitated when talking about frustrations, attention and concentration normal with observed pain behavior near the end of evaluation due to reported headache)).

Therefore, the medical record reasonably casts doubt on Plaintiff's claims of almost daily severe migraines. The ALJ clearly and convincingly explained why the medical record did not support the frequency, severity, and duration of Plaintiff's migraines. Moreover, to minimize triggering migraines, the ALJ limited Plaintiff to light work with limited exposure to airborne particulates and extreme heat.[36]

b.  *Activities of Daily Living*

The ALJ may discount a claimant's reported disabling symptoms if she can spend a substantial part of the day engaged in pursuits inconsistent with the reported disabling symptoms or involving the performance of work-related functions.[37] However, the ALJ must consider whether the nature of the activities allows for frequent breaks that would be inconsistent with maintaining a daily work schedule.[38]

Here, the ALJ highlighted that Plaintiff reported in August 2016 that she could vacuum, do dishes and laundry in a timely manner, and take care of her own grooming, meal preparation, and grocery shopping; and that in August 2020, she reported going for walks, taking pictures, reading, playing on her computer, performing personal hygiene, grocery shopping, and being able to do most of her

---

[36] AR 36.

[37] *Molina*, 674 F.3d at 1113.

[38] *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

chores (as limited by back pain). The ALJ found that Plaintiff's "ability to handle household chores . . . does not suggest her migraines were as frequent, persistent, and severe as alleged."[39]

On this record, the ALJ's clear finding is supported by substantial evidence and is a convincing reason to discount Plaintiff's disabling migraine reports. If Plaintiff suffered migraines 5–7 days a week for hours at a time, her ability to perform such daily living activities would be impacted. Moreover, Plaintiff did not report an inability to perform daily living activities due to migraines to treating providers, nor did she seek urgent care for migraines. The absence of such contemporaneous reports to treating providers supports the ALJ's finding that Plaintiff's ability to handle household chores and self-care was inconsistent with her testimony that she suffered migraines 5–7 days a week for hours at a time.

While a claimant's ability to carry on daily activities typically does not detract from one's credibility, here, Plaintiff's testimony that she suffers from severe disabling migraines for substantial parts of the day—for the majority of the week—is inconsistent with her ability to manage daily living activities.

## C.    Lay Witness: Plaintiff fails to establish error.

Plaintiff argues that the ALJ ignored the statements provided by Plaintiff's mother, daughter, and neighbor about her migraine symptoms. In June 2020, Plaintiff's mother stated that Plaintiff had 5–7 headaches a week for the past

---

[39] AR 38.

twelve months, that Plaintiff had a migraine 2 days before the statement was prepared, and that when Plaintiff has a migraine her mood changes, she is sensitive to light, she is clumsy, and she is unable to do activities of daily living.[40] Plaintiff's daughter stated that she has witnessed her mom deal with daily migraines, pain, and depression stemming from her pain since 2009.[41] Plaintiff's longtime neighbor stated that Plaintiff has struggled with severe migraines and shoulder, back, and hip pain for more than a decade.[42]

"Testimony by a lay witness provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness."[43]

Contrary to Plaintiff's assertion, the ALJ did not ignore these statements. Instead, the ALJ summarized each statement and found that they were not persuasive, primarily because the statements were inconsistent with the longitudinal medical record, which failed to show distress, head or eye pain, nausea, vomiting, or other symptoms that would be consistent with (almost) daily severe migraines. The ALJ's evaluation of these statements is a reasonable evaluation supported by substantial evidence. Plaintiff fails to establish error.

---

[40] AR 299–300.

[41] AR 363.

[42] AR 365.

[43] *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

1

**D.    Medical Opinions: Plaintiff fails to establish error.**

2

Plaintiff argues the ALJ ignored the opinions of PA-C Ryan Agostinelli and

3

Joyce Everhard, PhD, that Plaintiff would have difficulty with attendance due to

4

her migraines and related psychological symptoms. The Commissioner responds

5

that the ALJ reasonably found the opinions unpersuasive because they were

6

unsupported by the evaluators' own notes and were inconsistent with the broader

7

medical record. As is explained below, the ALJ's evaluation of these opinions is

8

rational and supported by substantial evidence.

9

1.    <u>Standard</u>

10

The ALJ must consider and articulate how persuasive she found each

11

medical opinion, including whether the medical opinion was consistent with and

12

supported by the record.[44] The factors for evaluating the persuasiveness of medical

13

opinions include, but are not limited to, supportability, consistency, relationship

14

with the claimant, and specialization.[45] Supportability and consistency are the

15

most important factors.[46] When considering the ALJ's findings, the court is

16

constrained to the reasons and supporting explanation offered by the ALJ.[47]

17

18

19

[44] 20 C.F.R. § 404.1520c; *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

20

[45] 20 C.F.R. § 404.1520c(c)(1)–(5).

21

[46] *Id.* § 404.1520c(b)(2).

22

[47] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

23

2.    <u>PA-C Agostinelli</u>

After the prescribed period (September 2018), PA-C Agostinelli conducted two physical functional examinations in 2021.[48] During the January 2021 examination, Plaintiff appeared in no acute distress, alert, and orientated with intact eyelids and extraocular eye movements, neutral mood, no psychomotor restlessness, no expressed anxiety, clear and coherent speech, intact insight and judgment, and intact general fund of knowledge. PA-C Agostinelli opined that Plaintiff could walk, stand, or sit for 6–8 hours during a workday, occasionally lift 25 pounds, frequently lift 10 pounds, and did not have postural, manipulative, or environmental limitations.

In October 2021, PA-C Agostinelli made observations consistent with the prior examination. He again opined that Plaintiff could walk, stand, or sit 6–8 hours a workday, occasionally lift 25 pounds, frequently lift 10 pounds, and had no manipulative limitations but was moderately limited in her ability to bend and stoop and should avoid excessive stress or exertion as such may worsen her headaches. PA-C Agostinelli also noted that Plaintiff reported that her "headaches are still debilitating and frequent, something that would cause significant unreliability with full time employment."[49]

---

[48] AR 684–88, 1119–23.

[49] AR 1123.

DISPOSITIVE ORDER - 18

The ALJ found both of PA-C Agostinelli's opinions not persuasive. The ALJ found the opinions not persuasive because 1) they were based on examinations after the end of the prescribed period; 2) they were not supported by information from the prescribed period; 3) the opined limitations were vague; and 4) the opined limitations were inconsistent with the medical evidence.

Plaintiff's challenge focuses on the ALJ's rejection of PA-C's Agostinelli's October 2021 opinion that Plaintiff's headaches limit her ability to regularly attend work. This challenge is not successful.

The ALJ's findings that PA-C Agostinelli's absenteeism opinion is both unsupported by evidence for the prescribed period of September 2018 and inconsistent with the longitudinal medical record is supported by substantial evidence. The ALJ cited medical records both before and after the prescribed period that indicate Plaintiff was not observed with symptoms consistent with near daily severe migraines, such as pain/distress, difficulty carrying on a conversation, nausea, or vomiting.[50] Moreover, the longitudinal medical record is notably absent of any emergency or urgent care records seeking treatment for migraines. The ALJ also appropriately considered that PA-C Agostinelli's opinions were issued 2–3 years after the prescribed period.

---

[50] AR 42–43 (citing AR 783, 443, 424, 416, 699, 706, 710, 718, 880, 862, 411, 408, 404, 396, 391, 386, 382, 378, 682, 678, 666–69, 673, 681–82, 842).

Plaintiff fails to establish that the ALJ erred in finding PA-C Agostinelli's absenteeism opinion unpersuasive.

### 3. Dr. Everhard

In August 2020, Dr. Everhart conducted a telehealth evaluation of Plaintiff, which included an interview, a mental-status examination, and a review of a March 2020 treatment record.[51] Dr. Everhart observed Plaintiff as anxious and somewhat depressed with good grooming, normal speech, no agitation unless talking about frustrations, good memory and recall, an ability to subtract serial 3s and add serial 7s, and an inability to subtract serial 7s. Near the end of the examination, Dr. Everhard observed pain behavior (slight facial grimaces) and Plaintiff stated that she was getting a headache. Plaintiff reported that she has migraines 6–7 days in a row, her pain is at a level 9/10, and her anxiety and depression have gotten worse with the pain. She stated that she is able to grocery shop twice a month and perform household chores, unless it is a chore that bothers her low back. Dr. Everhart opined that Plaintiff's attention, concentration, and intellect were within normal limits, she could perform simple and multi-step tasks with good pace and persistence, and she could interact with the public, coworkers, and supervisors, but she "may have difficulty maintaining regular attendance on a

---

[51] AR 665–69.

consistent basis without interruption due to her experience of pain and subsequent

psychological symptoms."[52]

The ALJ found Dr. Everhart's opinion not persuasive because it 1) was

performed after the prescribed period and therefore not supported by an

examination before the end of the prescribed period; 2) was vague; and

3) overestimated the severity of Plaintiff's mental symptoms because such were

inconsistent with the record near the prescribed period.[53]

First, it was appropriate for the ALJ to consider that Dr. Everhart's August

2020 opinion was based on an examination almost two years after the prescribed

period. Second, the ALJ also appropriately considered the longitudinal medical

record, looking particularly at the medical records closer to the prescribed period of

September 2018, which indicated:

- November 26, 2017: appearing well, well-nourished in no distress,
  orientated, normal mood and affect, extraocular movement intact,
  intact recent and remote memory, and intact judgment and insight.
  AR 901.

- January 6, 2018, and March 5, 2018: alert, orientated, normal mood
  and affect, no eye pain or difficulty hearing; no headaches,
  lightheadedness, or focal weakness. AR 718, 722.

---

[52] AR 669.

[53] AR 42.

DISPOSITIVE ORDER - 21

- April 2, 2018: well groomed, well-nourished, no apparent distress, alert, orientated, normal recent and remote memory, normal attention span and concentration, pupils symmetrical and equally reactive to light, and extraocular movements full. AR 785–76.

- April 30, 2018: alert, orientated, normal mood and affect with no headaches, lightheadedness, focal weakness, or fatigue. AR 725–26.

- May 10, 2018: same, with no eye pain, difficulty hearing, or nausea. AR 732–33.

- July 5 and 18, 2018: reporting no headaches, lightheadedness, focal weakness, nausea, vomiting, or fatigue; observed as neatly dressed, well nourished, alert, and orientated with normal mood and affect. AR 737–38, 857–58.

- August 28, 2018: alert, orientated, normal mood and affect, no eye pain or difficulty hearing; no headaches, lightheadedness, or focal weakness; neatly dressed and well-nourished, reporting that nausea and migraines may be due to wildfire smoke. AR 744.

Given the lack of support in the medical records for the reported severity and frequency of Plaintiff's migraines, the ALJ appropriately considered that Dr. Everhart's opinion that Plaintiff "may have difficulty maintaining regular attendance on a consistent basis" was vague and not supported by Dr. Everhart's

1    examination findings or the broader medical record.[54]  The ALJ's findings are

2    supported by substantial evidence.

3    **E.    RFC: Plaintiff fails to establish error.**

4            Plaintiff argues the RFC failed to include that she would be absent more

5    than two days per month due to her migraines and mental-health symptoms.[55]

6    This argument depends on her previously dismissed arguments that the ALJ erred

7    at step two and when evaluating her subjective symptom reports, the lay-witness

8    statements, and the medical opinions. Because there was no error, this final

9    argument necessarily fails.[56]

10

_____

11

12    [54] *See Meanel v. Apfel*, 172 F.3d 1111, 1113–14 (9th Cir. 1999) (determining that

13    the doctor's opinion that the claimant would have "some" diminution in her

14    concentration skills was conclusory and was not supported by relevant medical

      documentation); *Johnson v. Shalala*, 60 F.3d 1428, 1432–33 (9th Cir. 1995)

15    (determining that the doctor's conclusory opinion was not substantiated by

16    relevant medical evidence).

17    [55] *See Robbins. v. Soc. Sec. Admin*, 466 F.3d 880, 886 (9th Cir. 2006) (requiring the

18    ALJ to include properly supported functional limitations in the RFC hypothetical

19    posed to the vocational expert to ensure the identified occupations are consistent

20    with claimant's functional limitations); SSR 96-8p: Assessing Residual Functional

21    Capacity in Initial Claims.

22    [56] *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989).

23

1

## IV.    Conclusion

2      Plaintiff fails to establish that the ALJ erred. The ALJ's nondisability

3  findings are explained and supported by substantial evidence.

4      Accordingly, **IT IS HEREBY ORDERED**:

5      1.      The ALJ's nondisability decision is **AFFIRMED**.

6      2.      The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 12 and

7          13**, enter **JUDGMENT** in favor of the **Commissioner**, and **CLOSE**

8          the case.

9      IT IS SO ORDERED. The Clerk's Office is directed to file this order and

10  provide copies to all counsel.

11      DATED this 8th day of May 2024.

12                          _Edward F. Shea_
                    _____

13                       EDWARD F. SHEA
                 Senior United States District Judge

14

15

16

17

18

19

20

21

22

23